IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PERRY A. MARCH, in his capacity as the father of Samson Leo March and Tzipora Josette March, both minor children, ) ) ) ) | |
| Petitioner, ) ) | Civil No. 3:06-0878 Judge Trauger |
| v. ) ) | |
| LAWRENCE LEVINE and CAROLYN R. LEVINE, ) ) ) | |
| Respondents. ) ) | |

## MEMORANDUM and ORDER

Perry A. March has filed, for the second time in this court,[1] a Petition for Return of Minor Children (Docket No. 1) under the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11610 (2000). The petition is brought against the maternal grandparents of Mr. March's two minor children (Samson Leo March, age 16, and Tzipora Josette March, age 12), Lawrence and Carolyn Levine. Mr. March signed his original petition on July 27, 2006, but it was not formally filed with the court until September 12, 2006, because it was necessary for the court to resolve certain issues concerning the petitioner's *in forma pauperis* status. In response to the court's order that the Levines respond to the Petition, the Levines filed a Motion to Dismiss on numerous grounds (Docket No. 8), each supported by a separate Memorandum of

---

[1] Mr. March brought an earlier Petition under ICARA before this court in August of 2000. This court, in a lengthy opinion, ordered the Levines, also respondents in that action, to return the custody of these two minor children to Mr. March. *See March v. Levine,* 136 F.Supp.2d 831 (M.D. Tenn. 2000), which ruling was affirmed on appeal. *See March v. Levine*, 249 F.3d 462 (6th Cir. 2001). Additional background information can be found in those two published opinions.

1

Law (Docket Nos. 9-13).

The posture of this case is entirely different from the posture of the earlier case. Here, Mr. March has filed from prison a petition in which he seeks to designate who will have custody of his children while he is incarcerated[2]

Factual Background[3]

Pursuant to this court's earlier ruling, in 2001 the children were returned to Mr. March, who at that time was living in Mexico. The children remained in Mexico, living with Mr. March and Carmen Rojas Solorio March, whom Mr. March maintains is his lawful wife. Meanwhile, the investigation into the disappearance and suspected murder of Janet March, Mr. March's first wife and mother of Samson and Tzipora, continued. On August 3, 2005, Mr. March was arrested on a charge of murdering Janet March, expelled from Mexico, and returned to the United States to face the criminal charges. The expulsion was accomplished pursuant to an Expulsion Order issued by the Mexican government on July 27, 2005 and attached by Mr. March to his Petition, in translation. (Docket No. 1, Attach.) The Expulsion Order recites a variety of unlawful activities engaged in by Mr. March during his residence in Mexico (totally unrelated to the murder charge) and orders the expulsion of Mr. March from Mexico for 10 years. It cancels the immigration status of Mr. March as well as Samson and Tzipora March, orders the immediate expulsion of Mr. March, and orders the children expelled under the auspices of the United States Consul in Mexico under an "official exit letter." In a follow-up letter written August 3, 2005,

---

[2]On September 6, 2006, Mr. March was sentenced to a term of 56 years pursuant to convictions for murdering his wife, the mother of the two minor children at issue in this case, conspiring to have the Levines murdered, and other crimes.

[3]The facts, for the most part, are undisputed.
2

also attached to the Petition, Mexican authorities recite that Mr. March was formally expelled from the country on August 3, 2005, but that Samson and Tzipora were "not found" on that date, so the authorities were unable to "place them at the disposition of the United States Consul at Guadalajara." (Docket No. 1, Attach.) In fact, Mr. March admits in his Petition that Carmen March and Mr. March's father, Arthur March, arranged to have the children flown from Mexico to Chicago at some point between the issuance of the Expulsion Order on July 27, 2005 and the execution of it against Perry March on August 3, 2005. (Docket No. 1 at 13) Chicago is the residence of Perry March's brother, Ron March, who was to take temporary custody of Samson and Tzipora. Carmen March and Arthur March allegedly made the decision to send the children to Ron March in Chicago, a decision that Perry March admits he "ratified." (*Id.* at 14) On August 8, 2005, Ron March and his wife, Amy, apparently with Perry March's consent, filed petitions to secure temporary guardianship of the two children in an Illinois state court. (*Id.*)

On August 15, 2005, the Levines were granted temporary custody of Samson and Tzipora by the Nashville Davidson County Juvenile Court. They took this order to Illinois, and the Illinois court, after a hearing, returned physical custody of the children to the Levines on August 16, 2005. On August 22, 2005, the Davidson County Juvenile Court issued an order granting temporary custody to the Levines. Perry March appealed this ruling (*Id.* at 16) and, on July 24, 2006, the Court of Appeals of Tennessee affirmed the award of temporary custody to the Levines.[4]

---

[4]Additional factual background and the basis for the ruling by the Tennessee Court of Appeals can be found in their well-reasoned opinion. *See In re S.L.M. & T.J.M.*, __ S.W.3d __, 2006 WL 2052342 (Tenn. Ct. App).

3

Three days following that affirmance, Mr. March filed his petition with this court under ICARA.

Analysis

ICARA is a codification of the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), a treaty which has been adopted by both the United States and Mexico. Under ICARA, Mr. March must show by a preponderance of the evidence that the removal of his children from Mexico, or their retention in the United States by the respondents, was wrongful under Mexican law. Hague Convention, Article 3; 42 U.S.C. § 11603 (e)(1)(A). Once wrongful removal or retention is shown, then the burden shifts to the respondents to establish one of the various exceptions under the Hague Convention, some by a preponderance of the evidence and some by clear and convincing evidence. In *March v. Levine*, the Sixth Circuit cautioned that:

> [W]e must keep in mind the following general principals inherent in the Hague Convention and the ICARA:
>
>> First, a court in the abducted-to nation has jurisdiction to decide the merits of an abduction claim, but not the merits of the underlying custody dispute. Second, the Hague Convention is generally intended to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court. *Friedrich v. Friedrich (Friedrich II)*, 78 F.3d 1060, 1063-64 (6th Cir. 1996) (citations omitted).

249 F.3d 462, 468 (2001). The Hague Convention is designed "to ensure that the custody struggle must be carried out, in the first instance, under the laws of the country of habitual residence." *Friedrich v. Friedrich (Friedrich I)*, 983 F.2d 1396, 1403 (6th Cir. 1993).

Mr. March cannot establish, under any standard of proof, that Samson and Tzipora were wrongfully removed by the respondent Levines from Mexico, which was at that time their

4

habitual residence under the Hague Convention. In fact, the Levines had nothing to do with the children being placed on a flight from Mexico to Chicago. This was entirely the doing of Mr. March and/or his father and Carmen March.

What Mr. March argues is that the children are being wrongfully retained in Nashville and were "wrongfully removed from their father's custody. . . on August 16, 2005" (Docket No. 9 at 26), the date on which the Levines were given physical custody by the Illinois state court. However, instead of challenging that alleged wrongful removal and/or retention under the Hague Convention when it occurred, in August of 2005, Mr. March elected to challenge within the state court system the temporary custody determination made by the Davidson County Juvenile Court. He appealed the juvenile court's order through the Tennessee appellate court system and only filed this petition under the Hague Convention after he failed to prevail on appeal.

A strong case can be made that Mr. March has waived his resort to ICARA and the Hague Convention in this court. First, he agreed to his brother's pursuit of a custody order through the Illinois state courts. Second, he appealed the juvenile court custody determination through the Tennessee appellate court system. By doing so, he was acquiescing to the courts of this country determining the proper custody of his children, rather than insisting that the courts of Mexico make that custody determination. However, there is an even more compelling reason why the court cannot grant Mr. March's petition in this case.

Mr. March has been expelled from Mexico for a period of 10 years and may only be readmitted after that period of expulsion "through prior agreement with the Ministry of Internal

5

Security or the respective Deputy Minister." (Docket No.1, Attach.)[5]  Therefore, it would be impossible, even were Mr. March not in custody, for him to return to Mexico and litigate the custody of these two children during their minority in the Mexican courts.  Moreover, the court interprets the Expulsion Order and the letter of compliance attached to it to mean that Samson and Tzipora have similarly been expelled from the country.  Therefore, custody issues relating to them could not be appropriately determined in the Mexican courts.  The primary purpose of ICARA and the Hague Convention--to have custody matters determined in the habitual residence of the minor children--is frustrated and cannot be accomplished in this particular case.

Even had the children not been ordered removed from the country, there is authority in this circuit for the fact that an imprisoned parent may not bring an action under ICARA for return of the custody of his children:

> It is obvious that if Mr. Prevot returned to the United States and was imprisoned he could not successfully maintain an ICARA claim.  Either the habitual residence of the children would have changed, or they would no longer be in his custody, or the exceptions relating to risk of harm to the children would apply.

*In Re Prevot*, 59 F.3d 556, 567 (6th Cir. 1995).

The courts of Illinois and Tennessee have agreed that temporary custody of Samson and Tzipora is properly with the respondents, their maternal grandparents.  Mr. March was willing to allow the Illinois and Tennessee state courts to make the custody determination for his children until he lost in both venues.  Only then did he resort to the Hague Convention and this court.

---

[5] Mr. March maintains that the Expulsion Order was overturned by a Mexican court on April 11, 2006.  (Docket No. 1 at 19-20)  However, in support of this assertion, he has only attached to his petition an untranslated document written in Spanish that purports to have been printed off of America Online.  It bears no indicia of genuineness, and the court does not know what it says.

6

Because his father, Arthur March, has been convicted of assisting his son in disposing of the body of Janet March, he no longer is resident in Mexico. Therefore, only Carmen March, who has attempted to intervene in this action (Docket No. 2), remains in Mexico. The Levines maintain that Carmen and Perry March are not legally married and that Carmen March has never legally adopted Samson and Tzipora, and Mr. March has not presented to this court any documents that would establish that these assertions by the Levines are without merit.

Because the petitioner, Mr. March, has failed to show by a preponderance of the evidence that either the removal from Mexico or retention of Samson[6] and Tzipora March by the respondent Levines was wrongful as defined by the Convention, or that the aim of the Convention to have custody determinations made in the habitual residence of the minor children is possible or feasible, the burden never shifts to the respondents to establish one of the affirmative defenses under ICARA. The Petition, therefore, must be and is hereby **DENIED**.

Another ground on which the Petition must be denied is that, unless Mr. March's convictions are reversed, he has, in fact, become a permanent resident of the United States,[7] where the respondent Levines and the minor children are found. Under such circumstances, the Hague Convention provides no remedy to the petitioner. *See Gaudin v. Remis (Gaudin I),* 282 F.3d 1178, 1183 (9th Cir. 2002) ("The Convention cannot be invoked when the petitioner moves permanently to the same country in which the abductor and the children are located.").

---

[6] Because Samson has turned 16 during the pendency of this case (Docket No. 49 at 3), the court may not have jurisdiction to rule on the issues as to him under the Hague Convention. *See* Hague Convention, Article 4; *Gaudin v. Remis (Gaudin III)*, 415 F.3d 1028, 1037 (2005); *Gaudin v. Remis (Gaudin II)*, 379 F.3d 631, 638 (9th Cir. 2004).

[7] Mr. March is 45 years old and is serving a 56-year sentence.

The Petition to Intervene filed by Carmen March (Docket No. 2) and all other pending motions are **DENIED AS MOOT**.  This case is **DISMISSED**.

It is so **ORDERED**.

ENTER this 22nd day of December 2006.

_____
ALETA A. TRAUGER
U.S. District Judge